No objections to this Report and Recommendation (the "R&R") have been received, and upon a review for clear error. Finding none, I adopt the R&R as the decision of the Court. Plaintiff's motion for judgment on the pleadings is granted in part and denied in part, and the Commissioner's motion to remand for further administrative proceedings is granted. The case is remanded for further administrative proceedings and not solely for calculation of benefits. Upon remand, the Clerk of Court is respectfully directed to close the case.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SO ORDERED.

*Cathy Seibel*    2/21/24

CATHY SEIBEL, U.S.D.J.

KEVIN P. LYNCH,

                Plaintiff,

    *- against -*

MARTIN O'MALLEY, [1]
*Commissioner of Social Security*,

                Defendant.

22 Civ. 5620 (CS) (AEK)

**REPORT AND RECOMMENDATION**

**TO:  THE HONORABLE CATHY SEIBEL, U.S.D.J.**

Plaintiff Kevin Lynch brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Martin J. O'Malley, Commissioner of Social Security (the "Commissioner"), which denied his application for disability insurance benefits ("DIB"). ECF No. 1.  Plaintiff moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking remand to the Commissioner solely for the calculation of benefits, or, in the alternative, for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). [2]  ECF No. 19.  The Commissioner filed a motion to remand, acknowledging that remand is warranted, but arguing that the remand should be for further administrative proceedings and not solely for the calculation of benefits.  ECF No. 23.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Martin J. O'Malley is automatically substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this case.

[2] Sentence four of § 405(g) provides that the court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

For the reasons that follow, I respectfully recommend that Plaintiff's motion (ECF No. 19) be GRANTED IN PART and DENIED IN PART, that the Commissioner's motion (ECF No. 23) be GRANTED, and that this case be remanded for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g), and not solely for the calculation of benefits.

## BACKGROUND

### I.   Procedural Background

On December 13, 2011, Plaintiff filed an application for DIB, alleging August 15, 2010 as the onset date of his disability. AR 107.[3]  In his initial filing, Plaintiff claimed he was disabled due to chronic back and neck pain, a left shoulder injury, "heart blockages arteries," hypertension, high cholesterol, severe sleep apnea, "respiratory," gastroesophageal reflux disease, and hearing loss.  AR 256.  At the time of his application, Plaintiff was 5'5" tall and weighed 326 pounds.  *Id.*

After the Social Security Administration (the "SSA") denied his claim on or about May 2, 2012, AR 107-13, 136-40, Plaintiff requested a hearing before an administrative law judge ("ALJ"), AR 148-50.  An administrative hearing was held on January 24, 2013, and a supplemental hearing was conducted on June 18, 2013, before ALJ Robert Gonzalez, during which Plaintiff was represented by counsel.  AR 10-67, 70-106.  Plaintiff testified at the January 24, 2013 hearing, and both Plaintiff and a vocational expert ("VE") testified at the June 18, 2013 supplemental hearing.  AR 10-67, 70-106, 212, 240-41.  ALJ Gonzalez issued a decision on February 6, 2014 finding that Plaintiff was not disabled within the meaning of the Social

_____

[3] Citations to "AR" refer to the certified copy of the administrative record filed by the Commissioner.  ECF No. 15.

Security Act (the "Act") from the alleged onset date through the date of the decision.  AR 117-

27.  Plaintiff subsequently filed a request for review of ALJ Gonzalez's decision with the SSA's

Appeals Council, which was denied on February 23, 2015.  AR 1-7.  On April 2, 2015, Plaintiff

filed a lawsuit in this District seeking judicial review of the February 6, 2014 decision.  *See*

*Lynch v. Colvin*, No. 15-cv-2567 (RLE) (S.D.N.Y.).  After the administrative record and

Plaintiff's motion for judgment on the pleadings were filed, the parties entered into a stipulation

agreeing to remand the matter to the SSA for further administrative proceedings, and the court

so-ordered the stipulation on May 13, 2016.  *See id.*, ECF No. 30.

On July 8, 2016, the Appeals Council vacated ALJ Gonzalez's decision and remanded

the matter; in its remand order, the Appeals Council noted that although the ALJ gave "great

weight" to the opinion of Dr. Mark Johnston,[4] which stated, in part, that Plaintiff was somewhat

limited in his ability to concentrate, the residual functional capacity ("RFC") determination in the

ALJ's decision did not include any limitations associated with this issue.  AR 763.  On remand,

the Appeals Council directed the ALJ to "[g]ive further consideration to the nontreating source

opinion of Dr. Johnson [*sic*]. . . and explain the weight given to such opinion evidence."  AR

763.  The ALJ also was directed to "[g]ive further consideration to [Plaintiff's] maximum

residual functional capacity and provide appropriate rationale with specific references to

evidence of record in support of the assessed limitations."  AR 764.

A new administrative hearing was held on June 2, 2017 before ALJ Gonzalez.  AR 705-

39.  On February 27, 2018, ALJ Gonzalez issued a second decision, this time finding that

Plaintiff was not disabled within the meaning of the Act from the alleged onset date through

---

[4] The Appeals Council order erroneously refers to "Mark Johnson, M.D.," but it is clear
from ALJ Gonzalez's decision and the accompanying list of exhibits, *see* AR 123, 124, 130, that
the Appeals Council was referring to Dr. Johnston.

December 31, 2015, Plaintiff's date last insured.[5]  AR 679-93.  Plaintiff sought review of ALJ

Gonzalez's second decision via the Appeals Council, specifically taking exception to various

findings; on October 1, 2020, the Appeals Council issued its determination that Plaintiff's

exceptions had no merit.  AR 669-75.  Plaintiff then filed a second federal action in this District,

this time seeking judicial review of the February 27, 2018 ALJ decision.  *See Lynch v. Saul*, No.

20-cv-10081 (VEC) (BCM) (S.D.N.Y.).  After the administrative record was filed, the parties

submitted a proposed stipulation to remand the case for further administrative proceedings

pursuant to the Supreme Court's April 22, 2021 decision in *Carr v. Saul*, 141 S. Ct. 1352

(2021).[6]  AR 1513-14.  In its October 1, 2021 remand order, the Appeals Council did not identify

any substantive issues to be addressed.  *See* AR 1498-99.

On February 10, 2022, Plaintiff appeared at a third hearing, this time before ALJ Laura

Michalec Olszewski; both Plaintiff and VE Dale Pasculli testified at the hearing.  AR 1465-95.

---

[5] The "date last insured" is the last date a claimant is eligible to receive DIB, and the date is calculated based on the claimant's work history.  Specifically, "[t]o qualify for Social Security [DIB], a claimant generally must, *inter alia*, have earned at least twenty 'quarters of coverage' over the ten-year period prior to the onset of disability."  *Feliciano v. Colvin*, No. 12-cv-6202 (PGG), 2015 WL 1514507, at *1 n.1 (S.D.N.Y. Mar. 31, 2015).  "[W]hen a claimant does not show that a currently existing condition rendered [him or] her disabled prior to [his or] her date last insured, benefits must be denied."  *Mauro v. Berryhill*, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017).  Here, Plaintiff does not dispute that his "date last insured" for purposes of his claim for DIB was December 31, 2015.  *See* AR 253.  Accordingly, Plaintiff was required to establish that his disability arose on or before December 31, 2015, to qualify for DIB.

[6] In *Carr*, the Supreme Court held that applicants for Social Security disability benefits who had hearings conducted, and/or decisions issued, by an ALJ whose appointment was not in accordance with the Appointments Clause of the U.S. Constitution were not required to administratively exhaust their Appointments Clause challenges during proceedings before the SSA before raising such challenges for the first time in federal court.  *See* 141 S. Ct. at 1362.  Here, Plaintiff's second ALJ hearing was conducted, and the ALJ's decision was issued, before the ALJ's appointment was ratified by the Acting Commissioner of Social Security on July 16, 2018.  *See* AR 1498.  The parties' September 17, 2021 stipulation specifically acknowledged the Appointments Clause issue as the basis for the remand, and the parties agreed that Plaintiff's case would proceed before a different ALJ upon remand.  AR 1513.

ALJ Olszewski issued a decision on March 2, 2022 finding that Plaintiff was not disabled within the meaning of the Act from the alleged onset date through his date last insured.  AR 1438-53.  Plaintiff did not seek review of the March 2, 2022 decision by the Appeals Council.  Accordingly, ALJ Olszewski's decision became the final decision of the Commissioner.  The instant lawsuit, seeking judicial review of ALJ Olszewski's decision, was filed on June 30, 2022.  *See* ECF No. 1.

## II.   Testimonial, Medical, and Vocational Evidence

Plaintiff has provided a summary of the testimonial, medical, and vocational evidence contained in the administrative record; the Commissioner has not included such a summary in the SSA's motion for remand.  *See* ECF No. 20 ("Pl.'s Mem.") at 1-3, 5-9; ECF No. 24 ("Def.'s Mem.") at 2.  Based on an independent and thorough examination of the record, the Court finds that Plaintiff's summary of the evidence is largely accurate, and addresses most of the facts that are directly germane to the resolution of the pending motions.  Accordingly, the Court adopts the factual background as set forth by Plaintiff, and discusses the evidence in the record in more detail to the extent necessary to determine the issues raised in this case.  *See, e.g.*, *Banks v. Comm'r of Soc. Sec.*, No. 19-cv-929 (AJN) (SDA), 2020 WL 2768800, at *2 (S.D.N.Y. Jan. 16, 2020), *adopted by* 2020 WL 2765686 (S.D.N.Y. May 27, 2020).

## APPLICABLE LEGAL PRINCIPLES

## I.   Standard of Review

The scope of review in an appeal from a Social Security disability determination involves two levels of inquiry.  First, the court must review the Commissioner's decision to assess whether the Commissioner applied the correct legal standards when deciding that the plaintiff was not disabled.  *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  "'Failure to apply the

correct legal standards is grounds for reversal.'" *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Second, the court must evaluate whether the Commissioner's decision was supported by substantial evidence. *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 106 (quotation marks omitted). The "substantial evidence" standard of review is "very deferential," and it is not the function of the reviewing court "to determine *de novo* whether a plaintiff is disabled." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quotation marks omitted). To determine whether a decision by the Commissioner is supported by substantial evidence, courts must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation marks omitted). "The substantial evidence standard means once an ALJ finds facts, [courts] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (quotation marks omitted) (emphasis in original). "'If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.'" *Id.* (quoting *McIntyre v. Colvin*, 758 F3d 146, 149 (2d Cir. 2014)).

## II.   Determining Disability

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled under the Act if he or she suffers from an impairment which is "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work

which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "'[W]ork which exists in the

national economy' means work which exists in significant numbers either in the region where

such individual lives or in several regions of the country."  *Id.*

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner

must follow in determining whether a particular claimant is disabled.  *See* 20 C.F.R. §

404.1520(a)(4).  The Commissioner first considers whether the claimant is engaged in

"substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i), (b).  If the claimant is engaged in

substantial gainful activity, then the Commissioner will find that the claimant is not disabled; if

the claimant is not engaged in substantial gainful activity, then the Commissioner proceeds to the

second step, at which the Commissioner considers the medical severity of the claimant's

impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is "any impairment or

combination of impairments which significantly limits [the claimant's] physical or mental ability

to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant suffers from any severe

impairment, the Commissioner at step three must decide if the impairment meets or equals a

listed impairment; listed impairments are presumed severe enough to render an individual

disabled, and the criteria for each listing are found in Appendix 1 to Part 404, Subpart P of the

SSA regulations.  20 C.F.R § 404.1520(a)(4)(iii), (d).

If the claimant's impairments do not satisfy the criteria of a listed impairment at step

three, the Commissioner must then determine the claimant's RFC.  20 C.F.R. § 404.1520(e).  A

claimant's RFC represents "the most [he or she] can still do despite [his or her] limitations."  20

C.F.R. § 404.1545(a)(1).  After determining the claimant's RFC, the Commissioner proceeds to

the fourth step to determine whether the claimant can perform his or her past relevant work.  20

C.F.R. § 404.1520(a)(4)(iv), (e)-(f).  If it is found that the claimant cannot perform his or her past

relevant work, the Commissioner proceeds to step five to consider the claimant's RFC, age, education, and work experience to determine whether he or she can adjust to other work.  20 C.F.R. § 404.1520(a)(4)(v), (g).  To support a finding that the claimant is disabled, there must be no other work existing in significant numbers in the national economy that the claimant, in light of his or her RFC and vocational factors, is capable of performing.  20 C.F.R. § 404.1560(c).

The claimant bears the burden of proof on the first four steps of this analysis.  *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998).  If the ALJ concludes at an early step of the analysis that the claimant is not disabled, he or she need not proceed with the remaining steps. *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 2000).  If the fifth step is necessary, the burden shifts to the Commissioner to show that the claimant is capable of performing other work.  *DeChirico*, 134 F.3d at 1180.

## DISCUSSION

Both parties agree that remand to the SSA is necessary; they disagree, however, as to the scope of the remand.  Plaintiff maintains that the case should be remanded solely for calculation of benefits, Pl.'s Mem. at 23-25, while the Commissioner argues that the remand should include further administrative proceedings because "the record does not establish conclusive proof of disability such that a remand for further administrative proceedings would serve no purpose," Def.'s Mem. at 1.  The Commissioner asserts that on remand, an ALJ "should reevaluate [Plaintiff's] subjective complaints, re-assess his RFC, and issue a new decision"; in addition, on remand, the Appeals Council would "also instruct the ALJ to obtain supplemental vocational evidence."  *Id.* at 3.  As discussed below, because it is not self-evident how the reevaluation of certain evidence on remand will affect Plaintiff's RFC and the potential availability of jobs in the national economy that Plaintiff could potentially perform in light of an appropriate accounting of

his limitations, I respectfully recommend that the case be remanded for further administrative proceedings, and not solely for the calculation of benefits.

## I.  The ALJ's Decision

ALJ Olszewski employed the five-step analysis described above and issued a decision finding that Plaintiff was not disabled from the alleged onset date of August 15, 2010, through the date last insured, December 31, 2015.  AR 1438-53.  First, the ALJ found that Plaintiff, a retired police officer, had not engaged in substantial gainful activity between August 15, 2010 and December 31, 2015.  AR 1440-41.  Second, the ALJ determined that Plaintiff had the severe impairments of "obesity; cervical and lumbar degenerative disease; scoliosis; bicep tendonitis; left shoulder tendonitis and SLAP tear; impingement syndrome; chronic fatigue syndrome; coronary artery disease; hypertension; obstructive sleep apnea; and sinusitis."  AR 1441.[7]  Third, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

According to the ALJ, Plaintiff retained the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a),[8] with the following exceptions:

He could sit for six hours in an eight-hour workday, and stand and/or walk for two hours in an eight-hour workday.  He could occasionally climb ramps and stairs, but

---

[7] The ALJ also noted that Plaintiff received some treatment for a number of other conditions, but all of these were characterized by the ALJ as non-severe impairments, because there was no evidence that any of the conditions resulted in "significant, lasting work-related complications during the period at issue."  AR 1441.  Plaintiff does not contest any findings regarding non-severe impairments as part of his submissions in this appeal.

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

never climb ladders and scaffolds.  He could occasionally balance as defined by the Selected Characteristics of Occupations (SCO), and occasionally stoop.  He could never kneel, crouch and crawl.  The claimant had to avoid reaching overhead with the left non-dominant upper extremity, but he could frequently reach, push and pull in all other directions up to the limits of sedentary work with no restrictions on the right.  He could have occasional concentrated exposure to atmospheric conditions as defined in the SCO in the Dictionary of Occupational Titles, such as dust, odors, fumes, gases, poor ventilation and extreme hot and cold temperatures.  The claimant could occasionally make work-related judgments and decisions, and have occasional changes in work setting.  He could perform simple, routine and repetitive tasks.

AR 1443.

ALJ Olszewski determined Plaintiff's RFC by applying the two-step framework described in 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p.  AR 1443-51.[9] She concluded that although Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  AR 1444.  The ALJ provided several reasons for her conclusion, including that:  (1) Plaintiff's statements regarding his daily activities were not consistent with his statements concerning his symptoms; (2) the treatment Plaintiff received during the period in question was conservative; (3) the opinions from Plaintiff's treating

---

[9] The ALJ specified that the first step in this process is to determine "whether there is an underlying medically determinable physical or mental impairment(s)—*i.e.*, an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms."  AR 1443.  The second step in the process, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown," is for the ALJ to "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."  *Id.* "[W]henever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities."  *Id.*

physicians regarding the extent of Plaintiff's limitations were not consistent with the overall medical evidence and Plaintiff's statements concerning his daily activities; (4) Plaintiff maintained an "excellent work history prior to the alleged disability onset date"; and (5) there was a lack of evidence in the record of "reduced joint motion, muscle spasm, sensory deficits, and motor disruption that may result from or be associated with the symptom of pain and testimony provided" by Plaintiff. AR 1450-51.

ALJ Olszewski also considered the medical opinion evidence in the record. First, the ALJ summarized the opinion of Dr. Johnston, an Agency consultative examiner who examined Plaintiff in April 2012. AR 1447. As indicated by the ALJ, Dr. Johnston concluded that Plaintiff had moderate limitations performing tasks that required sustained concentration due to fatigue resulting from his sleep apnea, moderate limitations in bending and lifting, and moderate limitations in reaching and pulling with his left arm. AR 430. Dr. Johnston also opined that Plaintiff was "unable to work above shoulder level with his left arm." *Id.* The ALJ found the portion of Dr. Johnston's opinion regarding Plaintiff's physical limitations to be generally consistent with the record as a whole and based on a thorough in-person evaluation, and gave this portion of Dr. Johnston's opinion partial weight. AR 1447. The ALJ gave only some weight to Dr. Johnston's opinion concerning Plaintiff's ability to concentrate, however, because the ALJ found that the conclusion as to Plaintiff's mental restrictions was "outside the scope of [Dr. Johnston's] specialty." *Id.*

The ALJ also considered the opinion of Dr. A. Auerbach, an Agency consulting physician. Dr. Auerbach opined that Plaintiff could stand and walk for two hours in an eight-hour workday and sit for six hours in an eight-hour day. AR 432. Dr. Auerbach stated that Plaintiff could lift up to ten pounds occasionally and could occasionally reach overhead. *Id.* The

ALJ gave Dr. Auerbach's opinion partial weight because while it was generally consistent with the record as a whole and accounted for Plaintiff's history of multiple physical impairments, it was not consistent with Plaintiff's testimony regarding his chronic left shoulder issues.  AR 1448.

ALJ Olszewski also addressed the multiple opinions of Dr. Michael Hearns, one of Plaintiff's treating physicians.  AR 1448.  Dr. Hearns opined that Plaintiff would be limited to standing and walking for less than two hours, and sitting for less than six hours, in an eight-hour day, and was restricted to lifting and/or carrying between five and ten pounds.  AR 548.  He also stated that Plaintiff would require periods of bed rest during the day, would have difficulty performing eight hours of work, and would miss work on average two or more days each month.  AR 549.  The ALJ found Dr. Hearns's opinions to be "not well supported" by other experts or by Dr. Hearns's own treatment notes which, according to the ALJ, "failed to detail clinical findings to support his extreme opinions."  AR 1448.  Accordingly, the ALJ attributed "little weight" to Dr. Hearns's opinions.  *Id.*

Further, the ALJ discussed the opinions provided by Dr. Ruth Blash, another of Plaintiff's treating physicians.  *See* AR 1449.  In January 2013, Dr. Blash opined that Plaintiff was limited to standing and walking for less than two hours, and sitting for less than four hours, in an eight-hour day.  AR 546.  She further stated that Plaintiff could lift and/or carry more than ten pounds for up to one third of an eight-hour workday, but could lift and/or carry less than five pounds for up to two thirds of an eight-hour workday.  AR 546.  Dr. Blash issued an additional opinion outside of the relevant period, in April 2017.  AR 1208-09.  At that point, Dr. Blash opined that Plaintiff could stand or walk for less than one hour in an eight-hour workday, depending on his back pain.  AR 1208.  She also opined that Plaintiff could sit for four hours in

an eight-hour day, could lift and/or carry between five and ten pounds for one third of a workday, and could lift/and or carry less than five pounds for two thirds of a workday.  *Id.*  She also stated that Plaintiff could never reach overhead with his left arm, could occasionally reach overhead with his right arm, could reach forward and laterally occasionally with both arms, and could handle, finger, and feel frequently with both arms.  AR 1208.  The ALJ gave Dr. Blash's opinions little weight, explaining that her opinions were "poorly supported by her own treatment notes," "inconsistent with the medical evidence of record," and not supported by the opinions of Dr. Johnston and Dr. Auerbach.  AR 1449.

The ALJ also discussed the opinions of other providers that are included in the record. The ALJ gave slight weight to the opinions of Dr. Dorothy Kunstadt and Dr. Harold Bernanke, who provided medical opinions to the New York Medical Board Police Pension Fund, related to Plaintiff's applications for disability retirement benefits.  AR 1449; *see* AR 574-76.  Though the doctors opined that Plaintiff was "disabled from performing the full duties of a New York City Police Officer due to multiple medical problems," AR 575, the ALJ noted that the doctors employed a standard different from that used by the SSA, and moreover, that their opinions "were on matters reserved for the Commissioner to determine," AR 1449.  The ALJ gave little weight to opinions rendered by Nurse Practitioner Laura Nicholas.  *Id.*  NP Nicholas opined that Plaintiff suffered from a total disability, AR 1352-55, which the ALJ found to be "vague, conclusory in nature," and not supported by any sort of functional assessment, AR 1449. Finally, the ALJ noted that Dr. Isaiah Pickney, Dr. Tong Li, and Michael Yager, Ph.D. all opined that Plaintiff was limited to less than sedentary work.  *See* AR 1286-87, 1332-33, 1340-45.  The ALJ did not find any of these opinions to be useful in her determination, because none of these providers treated Plaintiff until "well after" the date last insured.  AR 1449.

At the fourth step, the ALJ found that Plaintiff was unable to perform his past relevant work as a police officer.  AR 1451.

At the fifth step, the ALJ noted that if Plaintiff had the RFC to perform the full range of sedentary work through the date last insured, a finding of "not disabled" would be directed by Medical-Vocational Rules 201.28 and 201.21.  AR 1452.  But the ALJ concluded that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations."  *Id.*  Thus, "[t]o determine the extent to which these limitations erode the unskilled sedentary occupational base, through the date last insured, the [ALJ] asked the [VE] whether jobs existed in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]."  *Id.*  The VE determined and testified that Plaintiff could perform the representative occupations of (1) addresser (6,000 jobs nationally); (2) stuffer (5,300 jobs nationally); and (3) table worker (9,500 jobs nationally).  AR 1452-53.  The ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), except that the DOT does not specify directional reaching; the ALJ concluded the VE based the portion of her testimony about directional reaching on her professional experience.  AR 1453.  Based on the VE's testimony, the ALJ concluded that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy" during the relevant period.  *Id.*  For all of these reasons, the ALJ determined that Plaintiff was not disabled from the alleged onset date of August 15, 2010, through the date last insured of December 31, 2015.  *Id.*

## II.   Legal Standards Applicable to Remand

Because the parties agree that remand is appropriate, the only question before the Court is the scope of that remand.  Plaintiff maintains that the Court should remand solely for the

calculation of benefits.  Pl.'s Mem. at 1, 23-25.  The Commissioner contends that the matter

should be remanded for further administrative proceedings.  Def.'s Mem. at 2-6.

Under the Act, the Court has the "power to enter, upon the pleadings and transcript of the

record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).

Remanding "solely for the calculation of benefits is an extraordinary action and is proper only

when further development of the record would serve no purpose."  *Rivera v. Barnhart*, 423 F.

Supp. 2d 271, 279 (S.D.N.Y. 2006) (quotation marks omitted); *accord Appling v. Comm'r of

Soc. Sec.*, No. 21-cv-5091 (SLC), 2022 WL 3594574, at *9 (S.D.N.Y. Aug. 23, 2022).  The

Second Circuit has held that remand solely for the calculation of benefits is appropriate "where

there is no apparent basis to conclude that a more complete record might support the

Commissioner's decision."  *Sczepanski v. Saul*, 946 F.3d 152, 161 (2d Cir. 2020); *see also

Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) ("we have reversed and ordered that benefits

be paid when the record provides persuasive proof of disability and a remand for further

evidentiary proceedings would serve no purpose").  But "where there is conflicting evidence of

record regarding a plaintiff's RFC, further administrative proceedings are necessary."  *Lloyd v.

Comm'r of Soc. Sec.*, 335 F. Supp. 3d 472, 481 (W.D.N.Y. 2018) (quotation marks omitted); *see

also Newell v. Saul*, No. 19-cv-10831 (JLC), 2021 WL 608991, at *23 (S.D.N.Y. Feb. 7, 2021)

(declining to remand solely for the calculation of benefits where claim "was first filed nearly a

decade ago" and explaining that "[i]n a case where, as here, there is conflicting medical

evidence, remand simply for the calculation of benefits is unwarranted" (cleaned up)).

Moreover, "absent a finding that the claimant was actually disabled, delay alone is an insufficient

basis on which to remand for benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) (finding

ten-year delay did not justify remand solely for calculation of benefits).

## III.    Remand Is Warranted Based on the ALJ's RFC Determination

Plaintiff argues that the ALJ erred in assessing the record evidence and determining his

RFC. *See* Pl.'s Mem. at 9-17. The Commissioner does not contest that the ALJ erred in

formulating the RFC and asserts that "an ALJ should reevaluate [Plaintiff's] subjective

complaints, re-assess his RFC, and issue a new decision." Def.'s Mem. at 3. The Commissioner

maintains, however, that because evidence in the record "could support a finding of non-

disability," remand for further proceedings, and not solely to calculate an award, is appropriate.

*See id.* at 4-5. The Court agrees with the Commissioner.

"An RFC finding is administrative in nature, not medical, and its determination is within

the province of the ALJ[.]" *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir.

2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ is "entitled to weigh all of

the evidence available to make an RFC finding that [is] consistent with the record as a whole."

*Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Ultimately, it is the

plaintiff's burden to demonstrate that the RFC should have been more restrictive than the RFC

assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary

order) (citing 42 U.S.C. § 423(d)(5)).

### A.    The ALJ's Analysis of Plaintiff's Subjective Statements

In accordance with SSA regulations, an ALJ is required to consider all available evidence

in a claimant's record in evaluating the intensity, persistence, and limiting effects of a claimant's

symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The ALJ must consider objective medical

evidence, as well as information regarding (i) the claimant's daily activities; (ii) the location,

duration, frequency, and intensity of his or her symptoms; (iii) any precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medications taken; (v) treatment other than medication used to relieve the claimant's symptoms; (vi) any measures used to relieve his or her symptoms; and (vii) other factors concerning functional limitations and restrictions resulting from the claimed symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii); *Gonzalez v. Kijakazi*, No. 21-cv-2685 (JLC), 2022 WL 3330346, at *12 (S.D.N.Y. Aug. 12, 2022); SSR 16-3p, 2017 WL 5180304, at *7-8.  Where an ALJ provides specific reasons for discounting a claimant's testimony regarding his or her symptoms, the ALJ's determination "is generally entitled to deference on appeal."  *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (*per curiam*).  In contrast, where an ALJ fails to explain the decision to discount a claimant's testimony "with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] decision is supported by substantial evidence," remand is warranted.  *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435-36 (S.D.N.Y. 2010).  "Furthermore, if the ALJ reviews the record evidence using an improper legal standard, his [or her] determination will not be upheld."  *Id.* at 436 (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).

### 1.    Plaintiff's Statements Regarding Back Pain

In her decision, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms, concluding that these statements were inconsistent with the medical evidence and other evidence in the record.  *See* AR 1444, 1451.  As her principal example of such inconsistency, the ALJ explained that in her view, "the record shows a lack of reduced joint motion, muscle spasm, sensory deficits, and motor disruption that may result from or be associated with the symptom of pain and testimony provided" by Plaintiff.

AR 1451.  At least with respect to muscle spasms and motor disruption, however, this statement overlooks many examples in Plaintiff's medical records that include these exact types of findings.

On numerous occasions throughout the relevant time period, Plaintiff's treating doctors noted that he experienced muscle spasms in his lower back area, where he claimed to be experiencing significant pain.  Dr. Miriam Kanter, one of Plaintiff's treating physicians, examined him regularly between 2011 and 2013 and found muscle spasms in his back.  *See* AR 417 (August 29, 2011), 1049-50 (September 16, 22, 2011), 1041 (May 1, 2012), 1091-93 (May 1, 2012, June 7, 2012), 1033 (December 20, 2012), 1032 (December 26, 2012), 651 (January 23, 2013).  On August 29, 2011, Plaintiff had an initial consultation with chiropractor Dr. Jeffrey Spina.  AR 418.  Plaintiff went on to treat with Dr. Spina regularly throughout the relevant period and was frequently observed to have "moderate muscle spasms" in the lumbar area of his back.  AR 422 ("[m]oderate muscle spasm was found in the lumbar area" on December 15, 2011), 655 ("[e]xamination revealed moderate muscle spasms in the cervical, thoracic and lumbar areas" on January 3, 2013), 654 ("[m]oderate muscle spasms were noted in the lumbar and sacral areas" on January 23, 2013), 653 ("[m]oderate muscle spasm was found in the lumbar areas" on January 29, 2013), 652 ("[m]oderate spasm was found in the cervical, thoracic and lumbar areas" on March 13, 2013), 1329 ("[m]oderate muscle spasms were noted in the lumbar areas" on June 3, 2013), 1328 ("+2 spasms at the lumbar erector spinae and quadratus lumborum" observed on November 26, 2013), 1327 ("+2 spasms [were] revealed upon palpation" on February 1, 2014), 1326 ("+2 spasms [were] revealed upon examination" on April 2, 2014), 1325 ("[p]alpation reveal[ed] +2 spasms" on September 29, 2014), 1324 ("+2 spasms at the lumbar erector spinae" on March 31, 2015), 1322 ("+2 spasms at the lumbar erector

spinae" on September 28, 2015), 1321 ("[e]xamination reveal[ed] +3 spasms" on November 10, 2015), 1320 ("+2 spasms [were] revealed upon examination" on December 2, 2015).  Plaintiff also began receiving physical therapy to treat his back pain in or around April 2012.  AR 1095. Between 2012 and 2015, Plaintiff's physical therapists observed that he experienced muscle spasms on numerous occasions.  AR 1093 ("moderate muscle spasms in the paralumbar spine" observed on May 1, 2012), 1091 ("moderate muscle spasms in the paralumbar musculature" observed on June 7, 2012), 1089 (same on December 13, 2012), 1087 (same on January 29, 2013), 1079 ("moderate muscle spasms" observed on November 26, 2013), 1077 (same on May 30, 2014), 1072-73 ("moderate paralumbar muscle spasms" observed on March 27, 2015).

    Also contrary to the ALJ's statement, Plaintiff was noted to have decreased range of motion in his back at various points.  In his initial August 29, 2011 appointment with Dr. Spina, Plaintiff was observed to have a decreased range of motion of the lumbar and cervical spine— each actual ("A") measurement taken on that date was below the normal ("N") measurement for cervical and lumbar range of motion.  AR 419-20.  On October 11, 2011, Dr. Sunitha Polepalle, a pain management specialist, examined Plaintiff and noted decreased forward flexion of the lumbar spine at 40 degrees, and that extension to 30 degrees produced pain.  AR 1030.  On December 15, 2011, Dr. Spina again noted a decreased range of motion.  AR 422.  On December 13, 2012, Elizabeth Candolita, a licensed physical therapy assistant, noted that plaintiff had a decreased active range of motion in his lower back and left shoulder.  AR 1089.  In a January 21, 2013 report, Dr. Herbert Garcia, one of Plaintiff's treating physicians, noted a limitation of lumbar flexion and extension as well as lateral flexion.  AR 330.  Dr. Spina observed a decreased range of motion again on March 13, 2013.  AR 652.  On May 30, 2014, Richard Villanoza, a physical therapist, treated Plaintiff and noted that he had a decreased range of motion.  AR 1077.

At a minimum, the ALJ has not provided sufficient explanation for her conclusion that the record shows a lack of findings regarding muscle spasms and reduced range of motion, both of which cast substantial doubt on the portion of the ALJ's assessment finding that Plaintiff's statements about his symptoms and limitations were "not consistent with the objective evidence of record." *See* AR 1451.  On remand, the ALJ must reconsider Plaintiff's subjective statements regarding his pain and other symptoms by giving appropriate consideration to medical records—including those listed above—that support Plaintiff's statements, or sufficient explanations for why these objective findings should not be credited.  *See Correale-Englehart*, 687 F. Supp. 2d at 438 (finding ALJ had erred in his assessment of the plaintiff's credibility where the ALJ "did not mention" facts corroborating the plaintiff's subjective statements, and determining that the ALJ's discussion of "the reliability of plaintiff's testimony . . . is at least incomplete in this respect").

While this error requires remand, the Court cannot state definitively that "further development of the record would serve no purpose." *See Rivera*, 423 F. Supp. 2d at 279. Indeed, in determining that Plaintiff's subjective statements regarding his limitations were not completely consistent with the record, the ALJ listed five reasons for arriving at her conclusion, only one of which concerned the evidence discussed above.  *See* AR 1449-51 (finding that Plaintiff's subjective statements were inconsistent with his activities of daily living, his conservative course of treatment, any reliable medical opinions, and Plaintiff's work history prior to the alleged onset date of his disability).  After further considering the evidence regarding Plaintiff's muscle spasms and range of motion limitations during the relevant period, the ALJ may still determine that her original conclusion remains correct in light of the other evidence, or may adjust the RFC in a manner that would still make it possible for Plaintiff to perform certain sedentary occupations.  Because the Court is unable to conclude what effect, if any, further

consideration of the evidence discussed above will have on Plaintiff's RFC, this error requires remand for further proceedings, and not solely for the calculation of benefits. *See Lloyd*, 335 F. Supp. 3d at 481 ("where there is conflicting evidence of record regarding a plaintiff's RFC, further administrative proceedings are necessary" (quotation marks omitted)).

### 2.   Evidence of Plaintiff's Complaints of Extreme Fatigue

Plaintiff also argues that the ALJ did not properly account for his daytime sleepiness in formulating the RFC.  Pl.'s Mem. at 11-13.  The Court agrees.

Throughout multiple administrative hearings and in statements made to medical professionals, Plaintiff consistently complained of excessive daytime fatigue.  In April 2012, Plaintiff told Dr. Johnston that he "normally requires a one-hour nap during the day."  AR 426. At his first hearing in January 2013, Plaintiff testified that he had fallen asleep during the day while driving and while doing police work.  AR 55.  He also testified that although he never was disciplined for sleeping at work, he arrived to work late "almost every day" due to his sleep issues.  AR 56.  At the supplemental hearing on June 18, 2013, Plaintiff testified that because of his sleep apnea he often felt "physically exhausted" and "could fall asleep at the drop of a dime." AR 77.  At the June 2, 2017 hearing, Plaintiff testified that he used a continuous positive airway pressure ("CPAP")[10] machine when he slept, but that the mask had "slippage issues and leak issues" that prevented him from sleeping well.  AR 725.  And at the February 2022 hearing, Plaintiff testified that when he was using the CPAP machine, "it really didn't do much" and he "was falling asleep everywhere."  AR 1488.

---

[10] "Positive airway pressure (PAP) treatment uses a machine to pump air under pressure into the airway of the lungs.  This helps keep the windpipe open during sleep.  The forced air delivered by CPAP . . . prevents episodes of airway collapse that block the breathing in people with obstructive sleep apnea and other breathing problems."  "Nasal CPAP," *available at* https://www.mountsinai.org/health-library/special-topic/nasal-cpap (last viewed Feb. 6, 2024).

It is well supported throughout the administrative record that Plaintiff suffered from severe obstructive sleep apnea. *See, e.g.*, AR 454-55, 570-71, 635-37, 1068-71. ALJ Olszewski acknowledged Plaintiff's condition in her decision, and stated that records reflected that Plaintiff's sleep apnea was "well controlled" and that Plaintiff was "doing great." AR 1447. But the portion of the record that the ALJ cited to support these statements is from December 2015—the very end of the relevant period. *Id.* (citing AR 1120). Also, importantly, the note cited by the ALJ for the conclusion that Plaintiff was "sleeping better" and "feeling better" references the bilevel positive airway pressure ("BIPAP")[11] machine that Plaintiff was first prescribed following a December 27, 2014 sleep study. *See* AR 717 (testifying at June 2, 2017 hearing that "*after the sleep study* they wound up taking me off the CPAP and putting me on a BIPAP machine") (emphasis added), 1068-71 (record of sleep study). The earliest reference to Plaintiff actually using a BIPAP machine does not appear in the record until November 2015. *See* AR 1242 (November 9, 2015 treatment note stating "[h]e has been feeling better – with the bipap").[12] For the vast majority of the relevant period, Plaintiff used a CPAP machine, and the record repeatedly reflects that the CPAP machine Plaintiff was prescribed and used regularly had various issues. Although Plaintiff reported to Dr. Ahmad Hadid on August 25, 2010 that the

---

[11] As compared to a CPAP, which "provides a gentle and steady pressure of air," a BIPAP "has a higher pressure when you breathe in and lower pressure when you breathe out." "Nasal CPAP," *available at* https://www.mountsinai.org/health-library/special-topic/nasal-cpap (last viewed Feb. 6, 2024).

[12] The ALJ's decision states that on November 9, 2015, Plaintiff reported "that he had a better CPAP mask and was sleeping better and feeling better." AR 1447. But the treatment note from that date does not reference a CPAP mask, and instead refers to the BIPAP machine that Plaintiff was prescribed when the CPAP machine was not effective. AR 1242; *see also* AR 40 (testifying at the January 24, 2013 hearing that he was "almost on the verge of going to what's called BIPAP, because I'm on the highest pressure setting" of CPAP), 717 (testifying at the June 2, 2017 hearing regarding starting BIPAP machine "after the sleep study"), 1120 (December 4, 2015 note stating "pt is now on BIPAP" and "[h]e was switched by Mount Sinai").

CPAP machine "really help[ed]," AR 568, he also stated to another doctor shortly thereafter that he was "still sleepy" despite his regular usage of the machine, AR 571.  There is also substantial documentation that Plaintiff's CPAP mask was ill fitting and that air "leaked" out of the mask, AR 571, 597, 599, 635, 637, 640, 1129, 1140, all of which corroborates Plaintiff's hearing testimony that his CPAP machine was not as effective as it could be due to "leaks" and "slipping," *see* AR 40, 77, 725, 795, 832.

In short, the very limited selection of records referenced in the ALJ's decision do not appear to present a comprehensive picture of the state of Plaintiff's sleep apnea condition during the relevant period, or how that condition may have more broadly affected Plaintiff's ability to work.  Critically, the ALJ failed to provide specific reasons for why she largely rejected Plaintiff's statements regarding the severity of his sleep apnea symptoms, despite corroborating evidence in the record.  This is also an error that requires remand.  *See Santiago v. Comm'r*, No. 20-cv-720 (PAE) (DF), 2021 WL 4207226, at *18 (S.D.N.Y. July 15, 2021) (finding ALJ erred by failing to address a plaintiff's statements regarding his symptoms of sleep apnea), *adopted by* 2021 WL 4206815 (S.D.N.Y. Aug. 2, 2021); *Cullen v. Comm'r of Soc. Sec.*, No. 15-cv-1180 (JCF), 2016 WL 3144050, at *7 (S.D.N.Y. May 19, 2016) (finding ALJ erred by mischaracterizing—and thereby failing to properly consider—the plaintiff's hearing testimony that "he was incapable of getting through most days without having to sleep in the afternoon for one-half to two hours").

But again, this Court is unable to determine exactly what impact the ALJ's error may have on the determination of Plaintiff's RFC.  Despite the ALJ's inadequate explanation of her discounting of Plaintiff's subjective statements regarding his sleep apnea, and her conclusion that Plaintiff's sleep apnea was "generally well-controlled," the ALJ did make certain provisions for

the condition in the RFC by limiting Plaintiff "to performing no more than simple work to account for the concentration deficits identified by Dr. Johnston." AR 1447. Accordingly, it is not clear whether further consideration of the evidence discussed above would alter Plaintiff's RFC. Remand for further proceedings is therefore the appropriate remedy so that the evidence can be properly evaluated and incorporated into a new RFC analysis. *See Daniels v. Kijakazi*, 617 F. Supp. 3d 180, 195 (S.D.N.Y. 2022) (remanding for further administrative proceedings because "the ALJ's failure to properly explain the basis for aspects of his decision does not establish that the ALJ's conclusion—that [plaintiff] was not disabled within the meaning of the Act—was without any apparent basis").

### B.    Plaintiff's Ability to Reach with His Left Arm

Plaintiff also maintains that medical opinion evidence demonstrates that his ability to reach laterally and forward was limited and that this restriction should have been included in the RFC. Pl.'s Mem. at 9-10. At a minimum, the ALJ failed to properly explain her determination regarding the scope of limitations associated with Plaintiff's left arm.

Generally, an ALJ must reconcile discrepancies between his or her RFC assessment and medical source statements. SSR 96-8p, 1996 WL 374184, at *7; *see Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006). "If the ALJ's RFC finding conflicts with an opinion from a medical source, the ALJ 'must explain why the opinion was not adopted.'" *Williams v. Colvin*, No. 13-cv-5431 (RLE), 2015 WL 1223789, at *8 (S.D.N.Y. Mar. 17, 2015) (quoting SSR 96-8p); *accord Garcia v. Berryhill*, No. 17-cv-10064 (BCM), 2018 WL 5961423, at *11 (S.D.N.Y. Nov. 14, 2018). While an "ALJ is not required to explicitly reconcile every conflicting shred of evidence in the record, an ALJ cannot simply selectively choose evidence in the record that supports [his] conclusions." *Williams*, 2015 WL 1223789, at *8 (cleaned up); *see*

*also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (an ALJ may not "arbitrarily substitute his own judgment for competent medical opinion").

Here, the ALJ failed to reconcile her opinion as to Plaintiff's ability to reach in all directions other than overhead with his left arm with the medical source statements.  In 2011 and 2012 Plaintiff was diagnosed with left rotator cuff tendinitis, biceps tendinitis, a SLAP tear or the glenoid labrum, tendinopathy, and osteoarthritic changes.  AR 331-32.  Dr. Johnston, who examined Plaintiff in 2012, opined that Plaintiff had "a moderate limitation of reaching and pulling with his left arm because of left shoulder bursitis."[13]  AR 430.  The ALJ gave Dr. Johnston's opinion partial weight and found it to be "based on a thorough in-person examination" and "generally consistent with the record as a whole."  AR 1447.  Nevertheless, despite crediting Dr. Johnston's opinion—at least enough to conclude that Plaintiff was limited in his ability to reach overhead with his left arm—the ALJ did not explain how she determined that Plaintiff could frequently reach with his left arm in all other directions.  This was an error. *See Garcia*, 2018 WL 5961423, at *11.

Moreover, Dr. Johnston's opinion is supported by other record evidence.  Dr. Johnston's opinion that Plaintiff was moderately limited in his ability to reach is consistent with medical opinions from Dr. Blash and Dr. Hearns, which state that Plaintiff's ability to reach forward and laterally was limited due to his shoulder injuries.  AR 1208-09, 1334-37.  Although these opinions were rendered after Plaintiff's date last insured, they both rely on medical records from the relevant period.  AR 1209 (stating that opinion is supported by 2011 MRIs and records showing a torn rotator cuff), 1337 (referencing "a [2012] MRI which showed a slap tear"); *see*

---

[13] Dr. Johnston's *separate* opinion that Plaintiff was "unable to work above shoulder level with his left arm" indicates that the moderate limitation in reaching applied to Plaintiff's ability to reach in all other directions.  *See* AR 430.

*Zaida B. v. Comm'r or Soc. Sec.*, No. 20-cv-9748 (GBD) (GRJ), 2022 WL 3867523, at *5 (S.D.N.Y. June 1, 2022) (explaining that assessments rendered after the date last insured can "be indicative of some enduring, preexisting, or even progressive condition, the permanent or variable nature of the diagnoses and ailments, and, perhaps, any potential intervening aggravating factors possibly accounting for some worsening of [the] condition" (cleaned up)), *adopted by* 2022 WL 3867903 (S.D.N.Y. Aug. 30, 2022). Dr. Johnston's opinion is also supported by Plaintiff's statements regarding his pain throughout the relevant period. In the most recent administrative hearing, Plaintiff testified that during the relevant period he "would experience pain in [his] arm sometimes reaching for stuff" and that he would feel a "sharp pain in [his] shoulder blade area" when he tried to "move something left to right." AR 1486-87. This statement is also corroborated by notes from Plaintiff's physical therapist—Plaintiff complained to his physical therapist that his pain caused him to have "difficulty with lower garment dressing," AR 1099, 1097, "difficulty with upper garment dressing," AR 1099, 1097, 1093, 1091, and difficulty scratching his back, AR 1115.

Once again, however, remand for further administrative proceedings, and not solely for the calculation of benefits, is the appropriate remedy for the ALJ's error in failing to adequately explain the basis for her assessment of Plaintiff's left arm limitations. Although there is evidence, identified here, that Plaintiff was limited in his ability to reach with his left arm, that evidence does not conclusively establish a disability. Indeed, as the Commissioner suggests, "Plaintiff's reported activities may contradict a finding of disability." *See* Def.'s Mem. at 4. Throughout the relevant period, records show that Plaintiff maintained the ability to drive, AR 42, 266, care for his young children, AR 632, 852-53, 1266, 1479-80, and do some yard work, AR 1241—all activities that would seem to require some ability to reach with both arms.

Because the ALJ's error here was in her failure to explain her determination that Plaintiff could frequently reach with his left arm, and because it is possible that after correcting this error, the ALJ may reach the same conclusion—including by relying in part on Plaintiff's activities of daily living—the Court cannot determine that a remand solely for the calculation of benefits is the proper remedy.  *See Rivera*, 423 F. Supp. 2d at 279 (remand for further proceedings appropriate where "there is evidence in the record tending to support a finding of non-disability").

On remand, the ALJ must reevaluate the evidence related to Plaintiff's ability to reach with his left arm, and specify how this condition impacts his RFC.  *See Selian*, 708 F.3d at 422. If the ALJ ultimately reaches the same conclusion—that Plaintiff is not limited in his ability to reach forward and laterally using his left arm—she must explain her reasoning for rejecting the medical source statements to the contrary.[14]

## IV.   The ALJ Did Not Err at Step Five

Plaintiff further asserts that the Commissioner erred in her analysis at Step Five, Pl.'s Mem. at 17-23, while the Commissioner insists that he satisfied his Step Five burden, Def.'s Mem. at 6.  The Commissioner also adds, however, that "if this matter is remanded for further proceedings, the Appeals Council will also instruct the ALJ to obtain supplemental vocational evidence."  *Id.*

---

[14] Because I respectfully recommend that remand for further administrative proceedings is warranted based on the aforementioned errors in the ALJ's RFC determination, this Report and Recommendation does not address Plaintiff's additional arguments concerning the assessment of certain MRIs and their impact on his RFC.  *See* Pl.'s Mem. at 13-14.

**A.      The ALJ's Reliance on the VE's Testimony Does Not Warrant Remand**

First, Plaintiff argues that the ALJ erred in relying on the VE's testimony by failing to inquire into a conflict between the VE's testimony and the DOT requirements for the jobs identified by the VE.  *See* Pl.'s Mem. at 19-20.  The Court disagrees.

The ALJ asked the VE to consider what jobs could be performed by an individual who could sit for six hours, stand or walk for a total of two hours, occasionally lift or carry up to ten pounds and frequently lift or carry less than ten pounds, occasionally climb ramps and stairs, occasionally balance and stoop, but never kneel, crouch, or crawl, or climb ladders and scaffolds.  AR 1489-90.  The ALJ also asked the VE to consider an individual who should avoid reaching overhead with their left non-dominant upper extremity, but can frequently reach, push, and pull in all other directions up to the limits of sedentary work with no restrictions on the right.  AR 1490; *see also* AR 1443 (RFC finding).  The VE testified that such an individual could perform the unskilled, sedentary jobs of (i) addresser; (ii) stuffer; and (iii) table worker.  AR 1490.

Plaintiff asserts that the jobs identified by the VE cannot be performed by someone with the limitations imposed by the ALJ.  Specifically, Plaintiff argues, the ALJ restricted Plaintiff to never reach overhead with his left arm, and yet the SCO provides that all three jobs require "frequent" reaching.  Pl.'s Mem. at 18.  Plaintiff relies on *Lockwood v. Commissioner of Social Security*, 914 F. 3d 87, 92 (2d Cir. 2019), which, he submits, held that "ALJs have a duty to identify and inquire into all 'apparent' conflicts—even if 'non obvious'—between a vocational expert's testimony," the SCO, and the DOT.  Pl.'s Mem. at 19-20.  But there is no error because here, in the face of an apparent conflict, the ALJ did what *Lockwood* requires.

In *Lockwood*, the panel held that the ALJ's finding that the plaintiff was capable of performing the three jobs identified by the VE was not based on substantial evidence because the

28

ALJ "failed to examine an apparent conflict between [the VE's] testimony and the [DOT]."  914

F.3d at 91.  The *Lockwood* decision makes clear that "[SSR 00-4p] mandates that whenever the

Commissioner intends to rely on a vocational expert's testimony, she must identify and inquire

into all those areas where the expert's testimony seems to conflict with the [DOT]."  *Id.* at 92

(cleaned up) (citing *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)).

 Here, the ALJ did exactly that.  As in *Lockwood*, the VE's testimony that Plaintiff was

"capable of performing a job that the [DOT] describes as requiring 'reaching,' [ ] create[d] at

least an apparent conflict that trigger[ed] the Commissioner's duty to elicit an explanation that

would justify crediting the testimony."  914 F.3d at 92.  Accordingly, the ALJ questioned the VE

about whether her testimony was consistent with the DOT, to which the VE responded: "Yes,

with the exception of just the one question relative to overhead reaching.  The DOT does not

specify directional reaching.  My response to that is based on professional experience."  AR

1490-91.  In her decision, the ALJ expressly addressed the apparent conflict and the VE's

testimony.  AR 1453 ("Pursuant to SSR 00-4p, the undersigned has determined that the [VE's]

testimony is consistent with the information contained in the [DOT], except that the [DOT] does

not specify directional reaching.  The [VE] based that portion of her testimony on her

professional experience.").  The ALJ thus made an appropriate inquiry and "obtain[ed] a

reasonable explanation" as to the apparent reaching conflict by probing the VE.  *See Lockwood*,

914 F.3d at 92; *see also Tafazwa S. v. Comm'r of Soc. Sec.*, No. 22-cv-10736 (GRJ), 2023 WL

6390625, at *6 (S.D.N.Y. Oct. 1, 2023); *Arias v. Kijakazi*, 623 F. Supp. 3d 277, 296 (S.D.N.Y.

2022).

 Plaintiff takes issue with the VE's statement that the DOT "does not specify directional

reaching," and also maintains that the jobs identified by the VE require "frequent overhead

29

reaching." *See* Pl.'s Mem. at 18-19.  Plaintiff is correct to question the VE's characterization of the DOT, since "[i]n both [SSR 85-15] and common usage, 'reaching' includes overhead reaching." *Lockwood*, 914 F.3d at 92.  Nevertheless, the VE was entitled to rely on her professional experience to testify that based on her expertise, overhead reaching is not required in the jobs that she listed.  *See Arias*, 623 F. Supp. 3d at 297 (quoting SSR 00-4p, 2000 WL 1898704, at *2).  While the Court would not have ordered remand exclusively for this reason, it is sensible that the Commissioner has committed to obtain supplemental vocational evidence on remand, *see* Def.'s Mem. at 6, which should help to address this issue more fully.  The additional vocational evidence must comply with the ALJ's responsibility to "elicit a reasonable explanation for [any] conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."  SSR 00-4p, 2000 WL 1898704, at *2; *see also Lockwood*, 914 F.3d at 91.

**B.      The VE Identified Occupations with a Sufficient Number of Jobs Available in the National Economy**

Second, Plaintiff argues that the Commissioner did not satisfy her burden to identify a "significant" number of jobs in the national economy that Plaintiff could perform in light of his RFC.  Pl.'s Mem. at 20-23.  Again, the Court disagrees.

"The [Act] and Commissioner's regulations do not provide a definition for a 'significant' number of jobs." *Dianne H. v. Kijakazi*, No. 21-cv-06235 (GRJ), 2022 WL 17251583, at *7 (S.D.N.Y. Nov. 28, 2022) (quotation marks omitted).  Courts have found, however, that the "'significant number' threshold is 'fairly minimal,' and they are 'generally guided by numbers that have been found 'significant' in other cases.'" *Id.* (quoting *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-30 (N.D.N.Y. 2015) (collecting cases)).  Here, the ALJ, relying on the testimony of the VE, concluded that the three occupations identified by the VE had a total

of nearly 21,000 jobs available in the national economy.  AR 1452-53.  While Plaintiff has cited

to a number of out-of-Circuit cases addressing what constitutes a "significant" number of jobs,

*see* Pl.'s Mem. at 20-21, several courts in this District have held that this number of jobs satisfies

the "significant number" threshold.  *See, e.g.*, *Dianne H.*, 2022 WL 17251583, at *8 ("[A] total

number over 17,000 is sufficient to satisfy the Commissioner's step five burden."); *see also*

*Maldonado v. Comm'r of Soc. Sec.*, No. 21-cv-7594 (RWL), 2023 WL 243617, at *10 (S.D.N.Y.

Jan. 18, 2023) (finding a total of 12,241 jobs to be significant, "consistent with the weight of

authority in and outside of this Circuit"); *Mota v. Comm'r of Soc. Sec.*, No. 20-cv-07294 (SN),

2022 WL 464098, at *12 (S.D.N.Y. Feb. 15, 2022) (finding a total of 9,600 jobs was sufficient).

This Court agrees with the findings of other courts in this District—the number of jobs identified

here is sufficient for the Commissioner to satisfy his burden of showing that there are relevant

jobs available in significant numbers in the national economy.

Plaintiff also argues that the three occupations identified by the VE are "obsolete."  Pl.'s

Mem. at 21.  Though this Court has some reservations about the SSA's reliance on seemingly

outdated sources of job information, it has "no basis to further examine these seeming

deficiencies in the Administration's means of determining whether a significant number of jobs

exist."  *Maldonado*, 2023 WL 243617, at *11 (discussing various sources that have questioned

the "antiquated" DOT that the SSA continues to use, which contains "numerous obsolete

positions that have been overtaken by progress and modernization over the last 45 years").

Accordingly, these questions regarding whether the Agency relies on obsolete job information

"must be left to another day."  *Id.*; *see Byrd v. Kijakazi*, No. 20-cv-4464 (JPO) (SLC), 2021 WL

5828021, at *19 (S.D.N.Y. Nov. 12, 2021) ("Courts in this Circuit have noted that the DOT is

outdated, but continue to consider the DOT a permissible source for disability adjudications.")

(quotation marks omitted), *adopted by* 2021 WL 5827636 (S.D.N.Y. Dec. 7, 2021).  The alleged obsolescence of the occupations identified by the VE therefore also does not provide a basis for remand.

## V.    The Appropriate Remedy

Because the Court is not able to make a determination as to whether Plaintiff is disabled within the meaning of the Act on its own, remand for further administrative proceedings is the appropriate remedy.  In this case, "the ALJ's failure to properly explain the basis for aspects of [her] decision does not establish that the ALJ's conclusion—that [Plaintiff] was not disabled within the meaning of the Act—was without any apparent basis."  *Daniels*, 617 F. Supp. 3d at 195.  Accordingly, it is incumbent upon the Commissioner to properly consider the evidence that supports Plaintiff's statements and the objective evidence regarding his pain, his ability to reach with his left arm, and his extreme fatigue, and to assess the impact of those findings on Plaintiff's RFC.  Moreover, the passage of time—while significant—is not a sufficient basis to merit a benefits award where, as here, there has not been a finding that any ALJ failed to comply with the Appeals Council's instructions.  *See Johnson v. Kijakazi*, No. 20-cv-2630 (BCM), 2021 WL 5513491, at *16 (S.D.N.Y. Nov. 24, 2021) (citing to cases remanded solely for the calculation of benefits where ALJs repeatedly failed to follow the instructions of the Appeals Council on remand); *see also Bush*, 94 F.3d at 46 (finding ten-year delay did not justify remand solely for calculation of benefits because "delay alone is an insufficient basis on which to remand for benefits").

For all of these reasons, I respectfully recommend that this case be remanded for further administrative proceedings, and not solely for the calculation of benefits.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's motion for judgment on the pleadings (ECF No. 19) be GRANTED IN PART and DENIED IN PART, and that the Commissioner's motion to remand the case for further administrative proceedings (ECF No. 23) be GRANTED.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(l) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Cathy Seibel, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the Honorable Andrew E. Krause at the same address.

Any request for an extension of time for filing objections or responses to objections must be directed to Judge Seibel, and not to the undersigned.

**Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Campbell*, 782 F.3d 93, 102 (2d Cir. 2015).

Dated: February 6, 2024
      White Plains, New York

                                    Respectfully submitted,

                                      ANDREW E. KRAUSE
                                      United States Magistrate Judge